Slip Op. 05-144

# UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **TOKYO KIKAI SEISAKUSHO, LTD. and TKS (USA), INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant. |

**Before: Timothy C. Stanceu, Judge**

**Court No. 05-00348**

## OPINION

[Defendant's motion to dismiss for lack of subject matter jurisdiction is granted]

Dated: November 7, 2005

*Sidley Austin Brown & Wood LLP* (*Neil R. Ellis*, *Lawrence R. Walders* and *Peter J. Toren*) and *Law Offices of Hoken S. Seki* (*Hoken S. Seki*) for plaintiffs.

*Stuart E. Schiffer*, Deputy Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, *Kent G. Huntington*, Trial Attorney, Commercial Litigation Branch, International Trade Field Office, United States Department of Justice; *Elizabeth Cooper Doyle*, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Stanceu, Judge:  Defendant United States moves, pursuant to USCIT Rule 12(b)(1), to dismiss for lack of subject matter jurisdiction the complaint of Tokyo Kikai Seisakusho, Ltd. ("TKS") and TKS (USA), Inc. ("TKS (USA)") (collectively "plaintiffs") challenging as unlawful the self-initiation by the United States Department of Commerce ("Commerce" or "the Department") of an antidumping "changed circumstances" review.  The changed circumstances review pertains to an antidumping duty order directed to imports of large newspaper printing

presses and their components ("LNPPs") from Japan.  Commerce had issued the antidumping

duty order in 1996 and revoked it in 2002.

Plaintiffs allege that "Commerce ha[d] no legal authority to initiate the review" under the

relevant antidumping statute because no antidumping duty order was in effect on LNPPs from

Japan when, on May 10, 2005, Commerce published its determination to self-initiate the changed

circumstances review.  *Compl*. at ¶ 3.  Plaintiffs seek a declaratory judgment and an order

permanently enjoining Commerce from continuing to conduct any such review.  Under 19 U.S.C.

§ 1675(b)(1) (2000), Commerce is empowered to conduct a changed circumstances review when

it receives information sufficient to warrant a review of a final affirmative determination

resulting in an antidumping duty order.

As the basis for the changed circumstances review, Commerce cited information

developed in a civil case tried in a U.S. district court in which TKS and TKS (USA) were sued

by a domestic LNPP producer for violations of the Antidumping Act of 1916.  In initiating the

changed circumstances review, Commerce stated that the information developed at the trial

established that TKS had imposed on one of its customers a fraudulent increase in the price of

LNPP merchandise in exchange for the receipt by the customer of secret rebates.

In its motion to dismiss, defendant argues that this court lacks jurisdiction under the

provision under which this action has been brought, 28 U.S.C. § 1581(i)(2000), because resort to

that jurisdictional provision is permissible only if a remedy under any other provision of § 1581

would be unavailable or manifestly inadequate.  Defendant points to § 1581(c), under which,

defendant contends, plaintiffs could challenge in this Court any final action that Commerce takes

as a result of the changed circumstances review.  Defendant also urges dismissal for

jurisdictional reasons on grounds of ripeness, standing, and failure to exhaust administrative remedies.

In opposing the motion to dismiss, plaintiffs argue that the act of initiating and maintaining an unlawful agency proceeding is regarded by relevant case law as a final agency action that may be challenged judicially without requiring plaintiffs to pursue their remedies by participating in the agency proceeding itself. Plaintiffs argue, further, that they have been injured by the decision of Commerce to self-initiate the changed circumstances review and that the issue presented by this case is ripe for judicial review as a purely legal question as to which no further legal development is necessary.

This court concludes that the issue plaintiffs have raised concerning the initiation of the changed circumstances review is not ripe for adjudication by this court. Accordingly, the court will enter judgment granting defendant's motion and dismissing this action for lack of subject matter jurisdiction.

## I. BACKGROUND

TKS, a business incorporated in Japan, manufactures and distributes LNPPs in Japan, the Unites States, and other countries through its subsidiaries. TKS (USA), a wholly-owed subsidiary of TKS incorporated in Delaware, markets and sells in the United States LNPPs manufactured by TKS. *See Comp.* ¶ 2.

Commerce issued its antidumping duty order on imports of LNPPs from Japan on September 4, 1996, assessing a dumping margin of 56.28 percent *ad valorem* to imports manufactured and/or exported by TKS. *See Notice of Antidumping Duty Order and Amended Final Determination of Sales at Less Than Fair Value for Large Newspaper Printing Presses*

*and Components Thereof, Whether Assembled or Unassembled, from Japan*, 61 Fed. Reg.

46,621, 41,622 (Sept. 4, 1996) ("*Antidumping Duty Order*"). In administrative reviews covering

LNPPs from Japan entered for consumption during three consecutive periods of review,

September 1, 1997 through August 31, 1998, September 1, 1998 through August 31, 1999, and

September 1, 1999 through August 31, 2000, Commerce calculated a weighted-average

antidumping duty margin of zero for TKS's entries. *See Final Results of Antidumping Duty*

*Administrative Review and Revocation in Part for Large Newspaper Printing Presses and*

*Components Thereof, Whether Assembled or Unassembled, From Japan*, 67 Fed. Reg. 2,190,

2,191-92 (Jan. 16, 2002). Based on the three consecutive zero margins, Commerce revoked the

*Antidumping Duty Order* with respect to all entries of the subject merchandise manufactured or

exported by TKS. *See id.* Commerce initiated a five-year sunset review on August 1, 2001 and

revoked the *Antidumping Duty Order* with respect to all entries of LNPPs on February 25, 2002

due to insufficient domestic interest in the proceedings. *See Notice of Final Results of Five-Year*

*Sunset Reviews and Revocation of Antidumping Duty Orders on Large Newspaper Printing*

*Presses and Components Thereof, Whether Assembled or Unassembled, from Japan (A-588-837)*

*and Germany (A-428-821)*, 67 Fed. Reg. 8,522 (Feb. 25, 2002).

In May 2000, Goss International Corporation ("Goss") brought a civil action in the U.S.

District Court for the Northern District of Iowa against TKS and TKS (USA), alleging that the

two defendants violated the Antidumping Act of 1916, codified at 15 U.S.C. § 72 (1994).[1] *See*

---

[1] The Antidumping Act of 1916 provides:
It shall be unlawful for any person importing or assisting in importing any articles
from any foreign country into the Unites States, commonly or systematically to
import, sell or cause to be imported or sold such articles within the United States
at a price substantially less than the actual market value or wholesale price of such

*Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, 321 F. Supp. 2d 1039, 1042 (N.D. Iowa 2004).

On December 3, 2003, a jury returned a verdict in favor of Goss in the amount of $10,539,949,

specifically finding that TKS and TKS (USA), with intent of destroying or injuring a domestic

industry, caused Goss to lose profits and opportunity costs with respect to three sales of LNPPs

that were made to the Dallas Morning News in 1996, the Orlando Sentinel in 1997, and the

Newark Star Ledger in 1997. *See Goss Int'l Corp.*, 321 F. Supp. 2d at 1042-43; *see also* Verdict

Form for *Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35 (N.D. Iowa filed Dec. 3,

2003) (*Pls.' Combined Opp'n To Mot. To Dismiss & Mem. In Supp. Of Mot. For Summ. J.* Ex. 2

at Ex. A ("*Pls.' Opp'n*")). The jury verdict withstood a motion by TKS and TKS (USA) for a

new trial and for judgment as a matter of law. *See Goss Int'l Corp.*, 321 F. Supp. 2d at 1055.

On May 10, 2005, Commerce, relying on its authority under section 751(b)(1) of the

Tariff Act of 1930, codified at 19 U.S.C. § 1675(b)(1), self-initiated the changed circumstances

review that is the subject of this action. Commerce stated that it was self-initiating the review

based upon information contained in the opinion of the District Court issued on May 26, 2004

denying the motion of TKS and TKS (USA) for a new trial and judgment as a matter of law. *See*

*Initiation of Changed Circumstances Review for Large Newspaper Printing Presses and*

---

articles, at the time of exportation to the United States, in the principal markets of the country of their production, or of other foreign countries to which they are commonly exported after adding to such market value or wholesale price, freight, duty, and other charges and expenses necessarily incident to the importation and sale thereof in the United States: *Provided*, [t]hat such act or acts be done with the intent of destroying or injuring an industry in the United States, or of preventing the establishment of an industry in the United States, or of restraining or monopolizing any part of trade and commerce in such articles in the United States.

15 U.S.C. § 72 (emphasis in original).

*Components Thereof, Whether Assembled or Unassembled, from Japan*, 70 Fed. Reg. 24,514, 24,515-16 (May 10, 2005) ("*Initiation Notice*").  This information consisted of evidence presented at trial that TKS and TKS (USA) "provided false information regarding its sale[] to the Dallas Morning News . . . , the subject of the Department's 1997-1998 [administrative] review." *Id.* at 24,516.  Such evidence concerned a secret arrangement between TKS and the Dallas Morning News by which TKS imposed a fraudulent "increase" in the price of the 1996 sale to the Dallas Morning News in exchange for rebates to the Dallas Morning News amounting to $2,200,000.  *See id.*; *see also Goss Int'l Corp.*, 321 F. Supp. 2d at 1044-45.  Evidence was presented at trial to establish the intent of this arrangement to conceal the fact that the "1996 sale to the [Dallas Morning News] was made at a dumped price." *Goss Int'l Corp.*, 321 F. Supp. 2d at 1044.  Further evidence was presented at trial implicating TKS and its counsel in a "concerted effort to conceal the secret rebates," which involved the falsifying and destruction of documents. *Id.* at 1045; *see also Initiation Notice*, 70 Fed. Reg. at 24,516.  Stating that "[t]he final results of the 1997-1998 administrative review were a factor in the Department's decisions to revoke TKS from the antidumping duty order, as well as to sunset the order," the *Initiation Notice* announced that Commerce placed on the record of the changed circumstances review the District Court's opinion in *Goss International Corporation v. Tokyo Kikai Seisakusho, Ltd.*, 321 F. Supp. 2d at 1039, and several public documents obtained from the record of that case. *Initiation Notice*, 70 Fed. Reg. at 24,516.  Commerce invited comments from interested parties on the new information and the actions the Department should take with respect to this new information. *See id.*

In their complaint in this action, filed May 11, 2005, plaintiffs challenge Commerce's authority to self-initiate the changed circumstances review and seek a declaratory judgment and an order permanently enjoining Commerce from conducting any such review. *See Compl.* ¶ 20 *et seq.* Defendant United States moved to dismiss the complaint on July 14, 2005, and plaintiffs filed a combined opposition and motion for summary judgment on August 25, 2005, to which defendant replied on September 23, 2005. Prior to the filing of defendant's reply to plaintiffs' opposition, Commerce published the preliminary results of the changed circumstances review. *See Preliminary Results of Changed Circumstances Review for Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, From Japan*, 70 Fed. Reg. 54,019 (Sept. 13, 2005) ("*Preliminary Results*"). In the *Preliminary Results*, the Department preliminarily determined that "in order to protect the integrity of the Department's proceedings," Commerce would revise the zero margin assigned to TKS for the 1997-1998 administrative review,[2] rescind the revocation of the *Antidumping Duty Order* for TKS and reconsider the revocation of the *Antidumping Duty Order* under the sunset review provision 19 U.S.C. § 1675(c) (2000). *See Preliminary Results*, 70 Fed. Reg. at 54,019. Commerce invited interested parties to comment on the *Preliminary Results* by October 13, 2005, thirty days after the publication of the *Preliminary Results* in the Federal Register.

---

[2] Commerce preliminarily assigned to the single TKS sale reviewed during the 1997-1998 administrative review (the 1996 sale to the Dallas Morning News) an antidumping duty margin of 59.67 percent, the rate calculated for Mitsubishi Heavy Industries, Ltd., a respondent in the administrative review, in the less-than-fair-value investigation, as amended and recalculated pursuant to a Court-ordered remand redetermination. *See Preliminary Results*, 70 Fed. Reg. at 54,022. This rate of duty, which Commerce proposed to assign under its "facts available" and "adverse inferences" authority under 19 U.S.C. § 1677e (2000), "is the highest calculated for any respondent in the [less than fair value] investigation." *Id.*

## II. DISCUSSION

Plaintiffs have claimed subject matter jurisdiction under 28 U.S.C. § 1581(i), specifically citing subparagraphs (i)(2) and (i)(4), which grant this court exclusive jurisdiction of any civil action commenced against the United States that arises out of any law of the United States providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and the "administration of enforcement with respect to" such matters, respectively. *Compl.* ¶ 4. The first argument in defendant's motion to dismiss is that subject matter jurisdiction is unavailable under 28 U.S.C. § 1581(i) because plaintiffs, upon completion of the proceedings before Commerce, could bring a civil action to contest any final results of the changed circumstances review, invoking this court's jurisdiction under § 1581(c) of that title, which grants this court exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930, codified at 19 U.S.C. § 1516a (2000). *See Def.'s Mot. To Dismiss* at 7-10. Defendant relies on the holding of the U.S. Court of Appeals for the Federal Circuit in *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992), that "'[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate.'" (Citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (emphasis in original)). Defendant's argument also relies on language in subsection (i) providing that "[t]his subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . ." 28 U.S.C. § 1581(i). Defendant argues, in

addition, that plaintiffs have not made a showing that a remedy under 28 U.S.C. § 1581(c) would be manifestly inadequate. *See Def.'s Mot. To Dismiss* at 10-12.

Plaintiffs could not validly have asserted their particular claim under section 516A of the Tariff Act of 1930, which provision would authorize judicial review of "[a] *final* determination . . . under section 1675 of this title." 19 U.S.C. § 1516a(a)(2)(B)(iii) (emphasis added). The court does not construe plaintiffs' complaint as an attempt to bring an action under that provision, and the court is aware of no other provision of the Tariff Act of 1930 under which plaintiffs could have brought an action to challenge the initiation and continuation of a changed circumstances review that has not reached a conclusion. Although its wording is less than clear in specifying its cause of action, plaintiffs' complaint can be construed to bring a civil action against the United States under the Administrative Procedure Act ("APA"), which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (2000). The complaint does not state expressly that plaintiffs are suing under the APA, but it relies on this provision in its allegation of standing. *See Compl.* ¶¶ 6-8. The complaint does not appear to plead a civil action against the United States under any other statute.[3] Accordingly, for purposes of considering defendant's motion to dismiss, the court will construe the complaint to bring an action under the APA.

---

[3] The complaint invokes this court's jurisdiction under 28 U.S.C. § 1581(i) but does not assert that its action arises solely thereunder. *See, e.g.*, *Humane Soc'y of the U.S. v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001) (stating that § 1581 is both a waiver of sovereign immunity and a grant of jurisdiction). Construing the complaint as alleging a cause of action under 28 U.S.C. § 1581 would not overcome the jurisdictional shortcomings arising from the lack of ripeness and the potential availability of jurisdiction under 28 U.S.C. § 1581(c), for the reasons discussed in this opinion.

Construing plaintiff's complaint to bring an action under the APA, however, raises jurisdictional problems that are insurmountable. The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. As discussed previously, the Tariff Act of 1930 does not itself authorize an action against the United States for an agency's initiation and continuation of an ongoing changed circumstances review. As a result, the APA would make reviewable an agency's initiation and continuation of a changed circumstances review only if the agency's action constituted "final agency action for which there is no other adequate remedy in a court." *Id.* Concerning the scope and timing of review of agency action, the APA also provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.*

Courts have considered the question of finality of agency action for purposes of review under the APA in the context of the larger judicial doctrine of ripeness. The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1966). The doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (citing *Buckley v. Valeo*, 424 U.S. 1, 114 (1976) (*per curiam*) and *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 (1972)).

In determining ripeness for judicial review, the court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. The court concludes that plaintiffs' challenge to the agency action is not yet fit for judicial decision because Commerce's initiation of the changed circumstances review is a preliminary agency action. The court concludes, further, that withholding court consideration will not cause a hardship to plaintiffs because participation in the changed circumstances review requires essentially that plaintiffs file a brief as an interested party in the proceeding. This is not a significant burden, the less so because plaintiffs already have developed their arguments in prosecuting this action before this court. Placing those arguments before Commerce will allow the agency to rule on the relevant issues and will avoid judicial review of an agency action that is subject to change when Commerce issues final results in the review. Each of these conclusions is discussed below.

A.  The Challenge to the Initiation of the Changed Circumstances Review Is Not Fit for
Judicial Decision

Commerce's initiation of the changed circumstances review and its publication of the *Preliminary Results* each constitute a "preliminary, procedural, or intermediate agency action" within the meaning of 5 U.S.C. § 704. Each would be "subject to review on the review of the final agency action" under the APA were they not directly reviewable under section 516A(a) of the Tariff Act of 1930 upon a review of the final changed circumstances determination. 5 U.S.C. § 704; *see* 19 U.S.C. § 1516a(a)(2)(B)(iii). If plaintiffs are dissatisfied with the outcome of the changed circumstances review, they will have the opportunity to challenge, in an action brought under 19 U.S.C. § 1516a, the authority of Commerce to initiate the review as well as other

aspects of a final decision.  Dismissing plaintiffs' complaint, therefore, will not deprive plaintiffs of their opportunity to be heard on the merits of their complaint.

Plaintiffs characterize their complaint as challenging the "very act of initiating and conducting a plainly unlawful agency proceeding" and "ask[] to be relieved of [their] obligation to participate." *Pls.' Opp'n* at 2, 13.  Plaintiffs rely on a line of cases to support the proposition that "a party may challenge the initiation of unlawful action by the Department under 28 U.S.C. § 1581(i)," citing *Dofasco Inc. v. United States*, 28 CIT ___, ___, 326 F. Supp. 2d 1340 (2004), *aff'd on other grounds*, 390 F.3d 1370 (Fed. Cir. 2004), *JIA Farn Manufacturing Co., Ltd. v. United States*, 17 CIT 187, 817 F. Supp. 969 (1993), *Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 CIT 584, 717 F. Supp. 847 (1989), *aff'd*, 903 F.2d 1555 (Fed. Cir. 1990), and *Carnation Enterprises Pvt. Ltd. v. United States*, 13 CIT 604, 719 F. Supp. 1084 (1989).  *Pls.' Opp'n* at 7.  Each of the cases on which plaintiffs rely, however, is readily distinguished from the case at bar.  All of the cases cited by plaintiffs address the issue of whether the remedy for which jurisdiction is provided under 28 U.S.C. § 1581(c) would be manifestly inadequate in an action challenging an agency determination to initiate, under 19 U.S.C. § 1675(a), a periodic administrative review of an antidumping or countervailing duty order.  Critical to the court's conclusion in each of these cases was the burdensome and time-consuming nature of participation in such an administrative review.  *See Dofasco Inc.*, 28 CIT at ___, 326 F. Supp. 2d at 1345; *JIA Farn Mfg. Co.*, 17 CIT at 189, 817 F. Supp. at 971-72; *Asociacion Colombiana*, 13 CIT at 587, 717 F. Supp. at 850; *Carnation Enters. Pvt. Ltd.*, 13 CIT at 609, 719 F. Supp. at 1088-89.  Plaintiffs are challenging judicially the initiation of a changed circumstances review that Commerce has commenced under 19 U.S.C. § 1675(b)(1), not the

initiation of a periodic administrative review brought under 19 U.S.C. § 1675(a). The difference between the two procedures is significant with respect to the burden imposed on a participant. Plaintiffs are unable to show that the burden or cost of filing comments to the *Preliminary Results* amounts to anything near the level of burden or cost associated with participating in a periodic administrative review.

Plaintiffs also cite *Abbott Laboratories v. Gardner*, 387 U.S. at 149-50, arguing that this court should take a "pragmatic" and "flexible" approach to determining finality for purposes of judicial review. *See Pls.' Opp'n* at 13. Plaintiffs add that, as did the claim in *Abbott Laboratories*, this challenge to agency action raises a purely legal question fit for judicial determination without further development of a factual record before the agency. *See id.* at 12. *Abbott Laboratories*, however, does not lend authority to the proposition that Commerce has taken an action that is final for purposes of APA judicial review.

In *Abbott Laboratories*, the Supreme Court held that promulgation by the Commissioner of Food and Drugs of regulations requiring prescription drug manufacturers to accompany the brand name of the drug with the government-established name every time the brand name was used on packaging was a final agency action for purposes of 5 U.S.C. § 704. The Court concluded therefore that a judicial challenge to the regulations seeking a declaratory judgment and injunctive relief was ripe for review even though the case arose before the Commissioner of Food and Drugs had brought an enforcement action under the regulations. *See Abbott Labs.*, 387 U.S. at 150-52. In its opinion in *Abbott Laboratories*, the Supreme Court observed that

> the impact of the regulations upon the petitioners is sufficiently direct and
> immediate as to render the issue appropriate for judicial review at this stage.
> These regulations purport to give an authoritative interpretation of a statutory

provision that has a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.  As the District Court found on the basis of uncontested allegations, "Either they must comply with the every time requirement and incur the costs of changing over their promotional material and labeling or they must follow their present course and risk prosecution."

*Id*. (footnote and citation omitted).

Commerce's initiation of the changed circumstances review and issuance of the *Preliminary Results* do not confront plaintiffs with the obligation to comply with any regulatory requirements or enforcement actions.  The ripeness issue presented by this case is thus readily distinguished from the ripeness issue decided by the Supreme Court in *Abbott Laboratories*.  The Commerce action challenged here more closely resembles the agency actions challenged in *Federal Trade Commission v. Standard Oil Co.*, 449 U.S. 232 (1980) ("*Standard Oil*"), and *U.S. Association of Importers of Textiles and Apparel v. United States*, 413 F.3d 1344 (Fed. Cir. 2005) ("*U.S. Association of Importers*").

In *Standard Oil*, the Federal Trade Commission ("FTC") issued an administrative complaint against a group of oil companies based upon a "reason to believe" that the Federal Trade Commission Act had been violated.  449 U.S. at 234-35.  Prior to the administrative resolution of the complaint, Standard Oil sued the FTC in a U.S. district court "alleging that the [FTC] had issued its complaint without having 'reason to believe' that" a violation of the Federal Trade Commission Act had occurred.  *Id.* at 235.  The *Standard Oil* Court applied the test established in *Abbott Laboratories* to conclude that the claim was not ripe for judicial review.  Under the "fitness for judicial decision" inquiry, the Supreme Court held that the administrative complaint, although "definitive" on the issue of whether the FTC had "reason to believe" that a

violation had occurred, nevertheless was a prerequisite for further agency action. *See Standard Oil*, 449 U.S. at 241. The complaint had "no legal force comparable to that of the regulation at issue in *Abbott Laboratories*, nor any comparable effect upon [Standard Oil's] daily business," despite its burdening identified oil companies to respond to the charges made against them. *Id.* at 242.

In *U.S. Association of Importers*, the Court of Appeals for the Federal Circuit applied the Supreme Court's analysis in *Standard Oil* in holding that the acceptance for consideration by the Committee for the Implementation of Textile Agreements, an agency of the Department of Commerce, of certain petitions "to request consultations with China under a 'safeguard provision' regarding the importation of textiles in the terms of China's accession to the World Trade Organization" was not a final agency action within the meaning of 5 U.S.C. § 704. *U.S. Ass'n of Imps.*, 416 F.3d at 1346. The Court of Appeals concluded that the acceptance of petitions in *U.S. Association of Importers* "is more analogous to the 'threshold determination' warranting further investigation in *Standard Oil . . .* than to the issuance of a formal regulation after notice and comment constituting a final agency action in *Abbott Laboratories*." *U.S. Ass'n of Imps.*, 413 F.3d at 1349. Commerce's initiation of the changed circumstances review and issuance of the *Preliminary Results* are similar in effect to the acceptance by Commerce of the petitions at issue in *U.S. Association of Importers*. Commerce, in the notices announcing these actions, indicated its intention to conduct further proceedings by which it would reach its final conclusions. *See Initiation Notice*, 70 Fed. Reg. at 24,514; *Preliminary Results*, 70 Fed. Reg. at 54,023.

Plaintiffs argue that even if the court finds that Commerce's "decision to initiate and conduct the changed circumstances review is not 'final agency action,' the Court should nonetheless find that this issue is fit for judicial consideration under the exception for non-final actions that plainly contravene the agency's statutory mandate." *Pls.' Opp'n* at 13. Plaintiffs rely for this exception on *Leedom v. Kyne*, 358 U.S. 184 (1958). The court does not find precedent in *Leedom* for invoking an exception to the finality requirement that would allow judicial review of the agency action challenged by plaintiffs.

*Leedom* involved a suit brought by the president of an association of engineers and scientists to strike down an order of the National Labor Relations Board that, in certifying a group of workers as appropriate for collective bargaining purposes under the National Labor Relations Act, had included in the group nine non-professional members along with 233 professional members. The Board had certified the group to include the nine non-professionals without a vote of the professional members, in defiance of an express prohibition in the National Labor Relations Act. The case reached the Supreme Court in a posture in which the Board "did not contest the trial court's conclusion that the Board, in commingling professional with nonprofessional employees in the unit, had acted in excess of its powers and had thereby worked injury to the statutory rights of the professional employees." *Leedom*, 358 U.S. at 187. The narrow jurisdictional question, decided by the Supreme Court in the affirmative, was whether the District Court was granted jurisdiction to hear the case by Section 24(8) of the Judicial Code, codified at 28 U.S.C. § 1337, when construed in a manner consistent with the judicial review provisions of the National Labor Relations Act. The Court's conclusion that jurisdiction existed rested on the uncontested fact that the unlawful action of the Board, which was taken despite a

statutory provision expressly prohibiting it, had inflicted an injury on the members of the association for which the law, apart from the review provisions in the National Labor Relations Act, afforded a remedy.  *See Leedom*, 358 U.S. at 186-89.

Leedom, which did not involve finality for purposes of judicial review under the APA, does not in any event constitute controlling authority for the exercise of subject matter jurisdiction over the case plaintiffs have brought before this court.  The critical fact underlying the Supreme Court's holding in *Leedom* was the injury inflicted on the members of the association by a violation by the Board of an express statutory prohibition, for which the law afforded a remedy.  Plaintiffs are unable to show how Commerce "inflicted an injury" upon them by the act of initiating the changed circumstances review.  Nor have plaintiffs established that Commerce, in initiating the changed circumstances review, committed a violation of an express statutory prohibition for which the law affords a remedy.  Read in pertinent part, the statute provides that "[w]henever the administering authority . . . receives information concerning . . . a final affirmative determination that resulted in an antidumping duty order under this subtitle . . . which shows changed circumstances sufficient to warrant a review of such determination . . . the administering authority . . . shall conduct a review of the determination . . . after publishing notice of the review in the Federal Register." 19 U.S.C. § 1675(b)(1).  This statutory provision, and the larger statutory scheme of which it is a part, do not grant to a party in the factual situation of TKS or TKS (USA) an enforceable right not to be the subject of a changed circumstances review that has yet to culminate in a regulatory action affecting that party's substantive rights.

Plaintiffs allege that this court, in reviewing the Commerce action, must determine only the narrow legal issue of whether Commerce exceeded the "authority granted [to it] by Congress

in the statute or its 'inherent authority' as an administrative agency" by initiating a changed circumstances review pursuant to 19 U.S.C. § 1675(b)(1) while no relevant "antidumping duty order or suspension agreement [was] in effect." *Compl.* ¶ 17; *Pls.' Opp'n* at 13. Plaintiffs' characterization appears to oversimplify the issues that could be relevant to judicial review of an agency action that actually is ripe for such review, when and if that occurs. Commerce, in its *Initiation Notice* and the *Preliminary Results*, alludes to evidence presented during the trial in the matter of *Goss International Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35, in which the jury returned a verdict in favor of Goss, and also refers to the District Court's denial of the motion of TKS and TKS (USA) for a new trial and judgment as a matter of law. Commerce's references to those events establish at least a possibility that judicial review would be concerned not only with the fact that no antidumping duty order was in effect at the time the changed circumstances review was initiated but also with the overall factual circumstances under which the antidumping duty order was revoked with respect to TKS and, subsequently, with respect to all other respondents. Because Commerce has yet to make any conclusive findings of fact or otherwise take any action that constitutes its final regulatory response to the various factual circumstances to which it refers in its notices, the issue plaintiffs urge this court to decide is not justiciable at this time.

### B. Withholding Court Consideration Will Not Cause Hardship to the Parties

Plaintiffs fail to show how "withholding court consideration" until the issuance of the final results of the changed circumstances review would amount to a hardship. *See Abbott Labs.*, 387 U.S. at 149. As noted earlier, the *Preliminary Results* invited interested parties to comment

through the filing of briefs.[4]  The filing of a brief commenting on the administrative proceeding does not appear to require plaintiffs to do significantly more than they already have done by briefing their issues before this court.

Because the court finds that the initiation by Commerce of the changed circumstances review does not constitute a final agency action and does not fall within the exemption allowing judicial review of non-final agency actions, and because the court further finds that plaintiffs will not suffer hardship if the court withholds review of this action, the court need not address the additional arguments raised by defendant in the motion to dismiss.  All other motions filed in this action, including the motion of Goss to intervene and for leave to file a reply to plaintiffs' opposition to defendant's motion to dismiss, will be denied as moot.

### III. CONCLUSION

The initiation by Commerce of the changed circumstances review does not constitute a final agency action fit for judicial decision, and dismissal of this action will not cause plaintiffs any real hardship.  Therefore, this action is not ripe for judicial review.  Judgment dismissing this action will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: November 7, 2005
       New York, New York

---

[4] The *Preliminary Results* directed that any briefs commenting on the review be filed by October 13, 2005, a date that recently has passed.  At the time this opinion was issued, Commerce had not yet issued a notice announcing any final conclusions it had reached as a result of the changed circumstances review.