Slip Op. 06-83

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ABITIBI-CONSOLIDATED INC. AND ITS AFFILIATES ABITIBI-CONSOLIDATED COMPANY OF CANADA, PRODUITS FORESTIERS PETITS PARIS INC., PRODUITS FORESTIERS LA TUQUE INC., PRODUITS FORESTIERS SAGUENAY INC., SOCIETE EN COMMANDITE OPITCIWAN; <u>AND</u> CANFOR CORPORATION AND ITS AFFILIATES CANFOR WOOD PRODUCTS MARKETING LTD., CANADIAN FOREST PRODUCTS, LTD., AND BOIS DAAQUAM INC. (a/k/a DAAQUAM LUMBER INC.), LAKELAND MILLS LTD., AND WINTON GLOBAL LUMBER LTD. (formerly THE PAS LUMBER COMPANY LTD.), <br><br>       Plaintiffs, <br><br>     v. <br><br> UNITED STATES, <br><br>       Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 06-00048 |

**OPINION**

[Motion to dismiss granted.]

Dated: June 1, 2006

<u>Arnold & Porter, LLP</u> (<u>Michael T. Shor</u>) for Plaintiff Abitibi-Consolidated Inc. and its affiliates Abitibi-Consolidated Company of Canada, Produits Forestiers Petits Paris Inc., Produits Forestiers La Tuque Inc., Produits Forestiers Saguenay Inc., and Societe en Commandite Opitciwan;

<u>Baker & McKenzie, LLP</u> (<u>Thomas Peele</u>, <u>Kevin M. O'Brien</u>, and <u>Kevin J. Sullivan</u>) for Plaintiff Canfor Corporation and its affiliates Canfor Wood Products Marketing, Ltd., Canadian Forest Products, Ltd., Bois Daaquam Inc. (a/k/a Daaquam Lumber Inc.), Lakeland Mills Ltd., and Winton Global Lumber Ltd. (formerly the Pas Lumber Company Ltd.);

<u>Steptoe & Johnson, LLP</u> (<u>W. George Grandison</u>, <u>Mark A. Moran</u>, <u>Matthew Frumin</u>, and <u>Daniel J. Calhoun</u>) for Plaintiff-Intervenors British Columbia Lumber Trade Council, Coast Forest Products Association, and Council of Forest Industries;

Wilmer, Cutler, Pickering, Hale, and Dorr, LLP (Robert C. Cassidy, Jr., John D. Greenwald, Jack A. Levy, and Tammy J. Horn) for Plaintiff-Intervenors the Quebec Lumber Manufacturers Association;

Baker & Hostetler, LLP (Elliot J. Feldman, Bryan J. Brown, and John Burke) for Plaintiff-Intervenors Ontario Forest Industries Association and Ontario Lumber Manufacturers Association;

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (Claudia Burke, Trial Attorney and Quentin M. Baird, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce) for Defendant United States;

Dewey Ballantine, LLP (Bradford L. Ward and David A. Bentley) for Defendant-Intervenor Coalition for Fair Lumber Imports Executive Committee.

Gordon, Judge:  In this action, plaintiffs and plaintiff-intervenors challenge the United States Department of Commerce's ("Commerce") respondent selection determinations in the third administrative review of the antidumping duty order covering softwood lumber from Canada.  Defendant and defendant-intervenor move, pursuant to USCIT Rule 12(b)(1), to dismiss this action for lack of subject matter jurisdiction.  For the following reasons, the motion is granted.

## I. Background

The third review currently is proceeding with final results due in September, 2006 (or December, 2006 if extended).  It covers imports of the subject merchandise for the period May 1, 2004 through April 30, 2005 and nearly 300 Canadian exporters or producers, including plaintiffs.  Certain Softwood Lumber from Canada, 70 Fed. Reg. 37,749 (June 30, 2005) (initiation of administrative review).

Given the large number of companies in the third review, Commerce had to address the threshold question of respondent selection.  In the first and second reviews,

Commerce selected eight of the largest respondents based on volume of exports pursuant to Section 777A(c)(2)(B) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677f-1(c)(2)(B) (2000) (all further citations to the Tariff Act of 1930 are to the relevant provision in Title 19 of the U.S. Code, 2000 edition).  In the third review, Commerce changed course and decided to limit the number of respondents using a "probability proportional to size" sampling method pursuant to 19 U.S.C. § 1677f-1(c)(2)(A). Plaintiffs were examined in the first and second reviews, but were not selected for examination under Commerce's newly applied sampling method in the third.

When plaintiffs learned they were not selected, they voluntarily responded to Commerce's third review questionnaires and submitted their sales and cost data well in advance of the deadlines for such submissions, all of which Commerce declined to examine pursuant to 19 U.S.C. § 1677m(a).  Rather than await the final results of the review, plaintiffs commenced this challenge to Commerce's respondent selection, seeking a writ of mandamus directing Commerce to accept plaintiffs as voluntary respondents.  Alternatively, they seek to preliminarily enjoin the third review pending selection of a statistically valid sample under 19 U.S.C. § 1677f-1(c)(2)(A), or selection of "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined," as provided for under 19 U.S.C. § 1677f-1(c)(2)(B).

## II. Standard of Review

"Plaintiffs carry the burden of demonstrating that jurisdiction exists." Techsnabexport, Ltd. v. United States, 16 CIT 420, 422, 795 F. Supp. 428, 432 (1992) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  In deciding

a motion to dismiss for lack of subject matter jurisdiction, the court assumes "all factual allegations to be true and draws all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). The court, however, does not similarly credit plaintiff's legal conclusions or arguments. See authorities cited in Falwell v. City of Lynchburg, 198 F. Supp. 2d 765, 772 (W.D.Va. 2002).

### III. Discussion

### A. Jurisdiction under 28 U.S.C. § 1581(c)

Plaintiffs do not assert jurisdiction under 28 U.S.C. § 1581(c) where challenges to Commerce decision-making in antidumping administrative reviews ordinarily lie. That avenue requires a "final determination," 19 U.S.C. § 1516a(a)(2)(B)(iii), and is available when Commerce publishes its final results of the third review in the Federal Register. 19 U.S.C. § 1516(a)(2). Although plaintiffs were not selected as mandatory respondents, and Commerce has declined to examine their voluntary responses, plaintiffs may continue to participate in the third review as interested parties. Plaintiffs may submit case briefs commenting on the preliminary results, including Commerce's respondent selection determinations. 19 C.F.R. § 351.309 (2004). No antidumping duty assessment will be made or cash deposit rate determined for any respondent until the final results are issued. Once those are issued, interested parties may challenge them in this Court under 28 U.S.C. § 1581(c) as a reviewable final determination under 19 U.S.C. § 1516a(a)(2)(B)(iii).

Plaintiffs, though, are not waiting for section 1581(c) jurisdiction to attach. They seek immediate relief under 28 U.S.C. § 1581(i), the Court's oft-litigated residual jurisdiction provision.

## B. Jurisdiction under 28 U.S.C. § 1581(i)

At first blush, plaintiffs' assertion of section 1581(i) jurisdiction during an ongoing antidumping proceeding appears to collide with the express direction that section 1581(i) does "not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . ." 28 U.S.C. § 1581(i). Essentially, the requisites for section 1581(i) jurisdiction are not satisfied by a challenge to antidumping determinations that will be "incorporated in or superceded by" the final results of an ongoing administrative review because section 1581(c) is the exclusive method of judicial review. H.R. Rep. No. 96-1235, at 48 (1980), as reprinted in 1980 U.S.C.C.A.N. 3729, 3759-60 ("[I]t is the intent of the Committee that the Court of International Trade not permit section (i), and in particular paragraph (4), to be utilized to circumvent the exclusive method of judicial review of those antidumping and countervailing duty determinations listed in section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a), as provided in that section. . . . The Committee intends that any determination specified in section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of the proceeding, will be, directly or by implication, incorporated in or superceded by any such determination, is reviewable exclusively as provided in section 516A."). These requisites discourage piecemeal review of antidumping determinations. They are problematical for plaintiffs who are challenging preliminary administrative

actions regarding respondent selection that will be incorporated in or superceded by the final results of the third review.

Admittedly, there are circumstances in which the Court has exercised its residual jurisdiction "to review certain actions taken by Commerce during the pendency of an [administrative proceeding]." Macmillan Bloedel Ltd. v. United States, 16 CIT 331, 331 (1992). See also, Sacilor, Acieries et Laminoirs De Lorraine v. United States, 3 CIT 191, 542 F. Supp. 1020 (1982) (exercising section 1581(i) jurisdiction during an antidumping investigation to enjoin the agency from disclosing confidential information); Dofasco Inc. v. United States, 28 CIT __, 326 F. Supp. 2d 1340, aff'd, 390 F.3d 1370 (Fed. Cir. 2004) (exercising section 1581(i) jurisdiction to review timeliness of request for administrative review, which, if untimely, would have precluded the review); H.R. Rep. No. 96-1235, at 48 (1980), as reprinted in 1980 U.S.C.C.A.N. 3729, 3760 ("[S]ubsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930."). The shorthand rule provides that the Court's residual jurisdiction under section 1581(i) attaches only if a remedy under another section of 1581 is unavailable or "manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987).

Applying this standard to other interlocutory challenges of ongoing antidumping or countervailing duty proceedings, this Court has declined to exercise section 1581(i) jurisdiction because the remedies under section 1581(c) were available, adequate, and reviewable. See, e.g., Macmillan Bloedel, 16 CIT at 332 (dismissing for lack of

jurisdiction an interlocutory challenge to initiation of countervailing duty investigation and noting, "[I]f Macmillan Bloedel will have a meaningful opportunity after the final determination to challenge Commerce's decision denying its exclusion request, then the court must stay its hand at this stage of the proceedings"); NSK v. United States, 28 CIT __, 350 F. Supp. 2d 1128 (2004) (dismissing for lack of jurisdiction an interlocutory challenge to Commerce's selection of model matching methodology for antidumping administrative review). Tokyo Kikai Seisakusho, Ltd. v. United States, 29 CIT __, 403 F. Supp. 2d 1287 (2005) (dismissing for lack of jurisdiction an interlocutory challenge to initiation of changed circumstances review that would be reviewable under 28 U.S.C. § 1581(c)).

## C. Jurisdiction under § 1581(i) for Administrative Procedure Act Claim

To avoid the problem presented by the above-quoted language from section 1581(i), plaintiffs contend that their specific challenge to Commerce's respondent selection in the pending administrative review is not listed in section 516A, and that the express exclusion in section 1581(i) does not apply to their action. (Motion Hr'g Tr. 69.) Plaintiffs instead assert that their action arises under Section 702 of the Administrative Procedure Act ("APA"), (Pls.' Opp'n to Mot. to Dismiss 20 n.8.), which they have standing to invoke pursuant to 28 U.S.C. § 2631(i) (2000). The plaintiffs in Tokyo Kikai shared a similar theory of jurisdiction. As in Tokyo Kikai, the APA based action here raises "jurisdictional problems that are insurmountable." 403 F. Supp. 2d at 1292.

Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702

(2000).  The APA further provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (2000).  (This APA provision is mirrored in the court's residual jurisdiction case law, which as noted above prescribes that section 1581(i) supplies jurisdiction only if a remedy under another section of 1581 is unavailable or manifestly inadequate.)   Section 704 of the APA also provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action," 5 U.S.C. § 704 (2000).   Plaintiffs' challenge to Commerce's respondent selection thus implicates questions of ripeness, which Defendant has raised in its motion to dismiss.  (Def.'s Mem. in Support of Mot. to Dismiss 12-15.)

### 1. Ripeness

Ripeness "is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-149 (1967)).  The ripeness inquiry evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  Nat'l Park Hospitality, 538 U.S. at 807 (citing Abbott Labs., 387 U.S. at 148).

Plaintiffs challenge two specific Commerce actions regarding respondent selection in the third review. The first is Commerce's failure to examine plaintiffs' voluntary submissions and to compute an individual dumping margins for each of them. The second concerns Commerce's decision to select a sample of respondents under 19 U.S.C. § 1677f-1(c)(2)(A). Neither decision is ripe for review.

## a. Fitness of Issues for Judicial Decision

On the first question, namely of the fitness of the issues for judicial decision, the court considers "whether the issue presented is a purely legal one, [and] whether consideration of that issue would benefit from a more concrete setting." Ciba-Geigy Corp. v. U.S. Envtl. Prot. Agency, 801 F.2d 430, 435 (D.C. Cir. 1986). As explained below, consideration of Commerce's respondent selection decisions will benefit from a more concrete setting.

## (i) Voluntary Respondent Claim

In challenging Commerce's refusal to examine their voluntary submissions, plaintiffs contend that Commerce must accept voluntary respondents when the agency limits the number of respondents examined in an administrative review. 19 U.S.C. § 1677m provides in pertinent part:

(a) Treatment of voluntary responses in countervailing or antidumping duty investigations and reviews

In any investigation . . . or a review . . . in which the administering authority has, under section 1677f-1(c)(2) . . ., limited the number of exporters or producers examined, . . . the administering authority shall establish . . . an individual weighted average dumping margin for any exporter or producer not initially selected for individual examination under such sections who submits to the administering authority the information requested from exporters or producers selected for examination, if--

> > (1) such information is so submitted by the date specified—
> >
> > . . . and
> >
> > (2) the number of exporters or producers who have submitted such information is not so large that individual examination of such exporters or producers would be unduly burdensome and inhibit the timely completion of <u>the investigation.</u>

19 U.S.C. § 1677m (emphasis added).  As noted earlier, plaintiffs timely submitted their voluntary questionnaire responses.  Plaintiffs contend that under the plain meaning of the statute they are entitled to an individual weighted average dumping margin.  According to plaintiffs, this action involves a review <u>and not</u> an "investigation," and Commerce therefore cannot apply the "unduly burdensome" and "timely completion" factors of subparagraph (a)(2).  Plaintiffs further contend that even if Commerce had the authority to decline to examine voluntary respondents in an administrative review based on the factors in subparagraph (a)(2), Commerce failed to make the necessary findings that individual examination of the voluntary responses would in fact be "unduly burdensome and inhibit the timely completion" of the review.  19 U.S.C. § 1677m.

The main thrust of plaintiffs' challenge, though, concentrates on the proper construction of section 1677m.  To resolve that issue the court applies the two-step inquiry of <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984).  At this stage of the proceedings, however, Commerce has yet to render a considered response to plaintiffs' arguments, simply notifying plaintiffs in separate one-page letters of Commerce's refusal to examine their voluntary submissions.  (App. D24, D25.).  The record only shows that Commerce declined to

examine plaintiffs' voluntary submissions based on Commerce's belief that it has discretion to do so under the statute. Id.

To apply the standard of review properly, the court must know Commerce's considered response to plaintiffs' arguments, which will include Commerce's interpretation of section 1677m, and Commerce's prior practices in dealing with large numbers of respondents. To obtain this information now, the court would have to remand the matter to Commerce and disrupt the administrative proceeding. By waiting for completion of the review, this information will, in all likelihood, manifest itself in the final results through Commerce's response to plaintiffs' case briefs. Exercising jurisdiction at this time would deprive Commerce of the opportunity to provide "an explanation of the basis for its determination that addresses relevant arguments . . . ." 19 U.S.C. § 1677f(i)(3)(A), which in this instance is not helpful or efficient for the court, the interested parties, or the agency.

**(ii) Sampling Selection Claim**

Commerce announced its "probability proportional to size" sampling method for respondent selection in a detailed memorandum analyzing hundreds of pages of comments from the parties and culminating in a recommendation to the Deputy Assistant Secretary for Import Administration, with which he agreed. (App D.23.) In challenging Commerce's "probability proportional to size" sampling method, plaintiffs allege that the selection of only eight respondents lacked statistical validity and was solely based, impermissibly, on Commerce's purported resource constraints. Commerce divided the review population into two strata—one comprising the 16 largest producers (based on production volume), and one comprising the 283 remaining small

producers. Commerce then randomly picked six companies from the large producer stratum and two from the small. The applicable statutory provision, 19 U.S.C. § 1677f-1, provides in pertinent part:

> (b) Selection of averages and samples
>
> The authority to select averages and statistically valid samples shall rest exclusively with the administering authority. The administering authority shall, to the greatest extent possible, consult with the exporters and producers regarding the method to be used to select exporters, producers, or types of products under this section.
>
> (c) Determination of dumping margin
>
> (1) General rule
>
> In determining weighted average dumping margins under section 1673b(d), 1673d(c), or 1675(a) of this title, the administering authority shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise.
>
> (2) Exception
>
> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to--
>
> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>
> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

19 U.S.C. § 1677f-1 (emphasis added).

Plaintiffs' argument that Commerce's approach is not statistically valid may have merit. Whatever the merits of plaintiffs' claim, however, immediate judicial intervention

in the third review is inappropriate because further development of the administrative record will enable more efficient judicial review of Commerce's sampling methodology than at present. The statute vests Commerce with exclusive authority to select a statistically valid sample, a grant of authority bounded by the requirement of statistical validity. The court cannot direct Commerce which sampling approach to use. Instead, the court can only review Commerce's chosen method to determine whether it is statistically valid. To do so, the court must know the measure of statistical validity, which the statute does not define. Commerce, and not the court, needs to wrestle with this issue in the first instance. The court should not entangle itself in this issue before Commerce has had the opportunity to formalize its determination in the final results. In short, the administrative proceeding needs to be completed. That process has begun; it needs to finish.

### b. Hardship of Withholding Court Consideration & Adequacy of Remedy under § 1581(c).

The second prong of the ripeness test concentrates on the "the hardship to the parties of withholding court consideration." Nat'l Park Hospitality, 538 U.S. at 807 (citing Abbott Labs., 387 U.S. at 178). This hardship prong is reflected in the "manifest inadequacy" requirement of the court's residual jurisdiction case law.

Plaintiffs advance three principal reasons why their remedy under section 1581(c) is manifestly inadequate: (1) their records, documentation, and personnel will degrade in some form or another waiting for a corrective remedy under section 1581(c), subjecting them to a potential adverse facts available finding when it arrives (Compl. ¶ 4.); (2) their businesses have been beset by unnecessary operational

uncertainty that can only be cured by immediate action under section 1581(i) (Compl. ¶ 5-6.), and; (3) their pursuit of remedies under section 1581(c) will require that a time-consuming and expensive administrative proceeding essentially has "to be restarted anew" if they prevail. (Compl. ¶ 8.) These hardships, however real and difficult, do not prevent section 1581(c) from affording plaintiffs an adequate remedy.

### (i) Records and Personnel Degradation

Plaintiffs contend that Commerce's respondent selection decisions have deprived them of their statutory rights to their own weighted average dumping margins and duty assessment rates and that it "likely would be early 2008" before that deprivation can be remedied under section 1581(c). At that time, plaintiffs claim they will be exposed to an "increased and high risk" of application of adverse facts available by Commerce because, due to the passage of time, their documentation and records may likely be more difficult or impossible to locate years from now, and plaintiffs' personnel will no longer be employed or recall the precise reasons for their transactions and entries years after the fact. (Compl. ¶ 4.) Assuming this allegation is true, it nevertheless does not render plaintiffs' remedy under section 1581(c) manifestly inadequate.

Plaintiffs' allegation reflects a basic requirement of the antidumping statute—the maintenance of necessary records and documentation to substantiate questionnaire responses during the process of verification. See 19 U.S.C. § 1677m(i). It also reflects a potential consequence for failing to do so—Commerce draws an adverse inference from an interested party's failing "to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). A continuing obligation to maintain records and institutional information during subsequent judicial review of the

administrative proceeding is an unremarkable condition of the antidumping statute and of litigation generally. That reality, though, does not render the remedy under section 1581(c) manifestly inadequate and establish a basis for section 1581(i) jurisdiction. Instead, plaintiffs know the posture of their case and can evaluate the prospects and relative benefits of pursuing relief under section 1581(c) and take whatever measures they deem necessary to achieve the desired result, including the preservation of documents, records, and personnel.

### (ii) Business Uncertainty

Plaintiffs also contend that Commerce's unlawful respondent selection has caused them to suffer an unnecessary competitive disadvantage in the market because key competitors including Tembec, West Fraser, and Weyerhaeuser are mandatory respondents and are able to obtain their own margins of dumping, duty assessment rates, and cash deposit rates, whereas plaintiffs cannot. (Compl. ¶ 5.) Armed with the superior knowledge of their own circumstances, these competitors "can plan their lumber production and sales over the next couple of years," whereas plaintiffs cannot. Id. Additionally, Plaintiff Abitibi alleges that the uncertainty now plaguing its operating decisions is further magnified by its "difficult financial circumstances, following three consecutive years of substantial operating losses." (Compl. ¶ 6.) Plaintiff Abitibi contends that it is now critical to evaluate the profitability and cash flow implications of new sawmill acquisitions or joint ventures to access raw material inputs, which it cannot do given the "high degree of uncertainty regarding Abitibi's future antidumping duty assessment and cash deposit rates." Id.

Again, assuming these allegations to be true, they do not render the relief available under section 1581(c) manifestly inadequate.  Such uncertainty is an ordinary effect of the antidumping regime, and therefore, the disruptions it entails cannot constitute a basis under which the court bypasses section 1581(c) jurisdiction in favor of section 1581(i).  The court cannot sensibly hold otherwise and thereby invite challenges to Commerce's interim determinations that introduce such business uncertainty during an administrative review.  The absence of certainty regarding the dumping margins and final assessment of antidumping duties is a characteristic of the retrospective system of administrative reviews designed by Congress.  See D&L Supply Co. v. United States, 17 CIT 1419, 1422, 841 F. Supp. 1312, 1315 (1993) ("the uncertainty of knowing the final amount of duties due at the time of entry is simply an inherent part of importing merchandise into the United States.").

**(iii) Repeating a Time Consuming and Expensive Administrative Proceeding**

Plaintiffs contend that if they wait and ultimately prevail in a challenge under section 1581(c), a "time-consuming and expensive administrative proceeding" would essentially have to be started anew.  (Compl. ¶ 8.)  Assuming that this is indeed the likely result of a court ordered remand under section 1581(c), such inconvenience and expense are inherent in the administrative and judicial review process and cannot therefore constitute manifest inadequacy for what is the normal jurisdictional scheme. See Nippon Steel Corp. v. United States, 219 F.3d 1348, 1353 (Fed. Cir. 2000) (citing FTC v. Standard Oil Co., 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.")).  Plaintiffs' situation is no different from any other respondent that disagrees with an approach or

methodology Commerce has taken that requires different information and documents from those that would be necessary under an interested party's preferred approach.

## IV. CONCLUSION

Commerce's respondent selection determinations are interim in nature, and will be incorporated in or superceded by the final results of the third review. Those final results are reviewable under 19 U.S.C. § 1516a(a)(2)(B)(iii), and therefore 28 U.S.C. § 1581(c) is the exclusive means of judicial review for plaintiffs' claims. Alternatively, Commerce's respondent selection determinations are not ripe for review. In sum, plaintiffs' remedy under 28 U.S.C. § 1581(c) is not manifestly inadequate. Therefore, section 1581(i) jurisdiction is not available for plaintiffs' action. The court does not reach the question of standing raised by defendant-intervenors. Judgment dismissing this action will be entered accordingly.

/s/ Leo M. Gordon
Leo M. Gordon
Judge

Dated: New York, New York
June 1, 2006