**Slip Op. 07-50**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

GOVERNMENT OF THE PEOPLE'S REPUBLIC OF CHINA, GOLD EAST PAPER (JIANGSU) COMPANY, LIMITED, and GLOBAL PAPER SOLUTIONS, INCORPORATED,

Plaintiffs,

v.

UNITED STATES,

Defendant,

and

NEWPAGE CORPORATION, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC

Defendants-Intervenor.

**Before: Gregory W. Carman, Judge**

Court No. 07-00010

[Defendant's Motion to Dismiss for lack of jurisdiction is granted.]

Vinson & Elkins, LLP (William H. Barringer, Daniel L. Porter, Valerie Ellis, Robert DeFrancesco, Matthew P. McCullough, and David Hardin) for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (John J. Todor) for Defendant.

Carrie L. Owens, Senior Attorney, U.S. Department of Commerce, Import Administration, Office of Chief Counsel, of counsel, for Defendant.

King & Spalding, LLP (Gilbert B. Kaplan, Joseph W. Dorn, Jeffrey M. Telep, Cris R. Revaz, and Stephen A. Jones) for Defendant-Intervenor NewPage Corporation.

Stewart and Stewart (Geert M. De Prest) for Defendant-Intervenor United Steel, Paper and
Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International
Union, ALF-CIO-CLC.

March 29, 2007

**OPINION**

**Carman, Judge:** Two motions are currently before this Court.[1]  On one side, Plaintiffs,

Government of the People's Republic of China, Gold East Paper (Jiangsu) Company, Ltd., and

Global Paper Solutions, Inc., request a preliminary injunction to enjoin the Department of

Commerce ("Commerce") from conducting a countervailing duty investigation of coated free

sheet paper from the People's Republic of China ("PRC").  (Mot. for TRO & Prelim. Inj. & to

Advance & Consol. Trial on the Merits ("Pls.' Mot. for Prelim. Inj.") 1.)  Plaintiffs allege that

Commerce is not authorized to apply countervailing duty law to products from non-market

economies ("NMEs") like the PRC and therefore should be enjoined from continuing the

countervailing duty investigation it initiated.  (Mem. of Law in Supp. of Pls.' Mot for TRO &

for a Prelim. Inj. (Pls.' Prelim. Inj. Mem.) 1-3.)  On the other side, Defendant, the United States

("Government"), requests on behalf of Commerce that this Court dismiss Plaintiffs' action for

lack of jurisdiction.[2]  (Def.'s Mot. to Dismiss 1.)  Because this Court lacks jurisdiction to hear

---

[1]Defendant-Intervenor United Steel, Paper and Forestry, Rubber, Manufacturing, Energy,
Allied Industrial and Service Workers International Union, AFL-CIO-CLC did not participate
briefing these motions.

[2]Defendant-Intervenor, NewPage Corporation ("NewPage"), also filed a motion to
dismiss for lack of jurisdiction.  Because NewPage's and the Government's motions to dismiss
and supporting memoranda are similar, this Court will only refer to Defendant's Motion to
Dismiss except in instances where the two motions differ.

the claims raised by Plaintiffs, this Court grants Defendant's Motion to Dismiss and does not

address Plaintiffs' Motion for a Preliminary Injunction.

## BACKGROUND

Commerce designated the PRC as an NME, which is "any foreign country [Commerce]

determines does not operate on market principles of cost or pricing structures, so that sales of

merchandise in such country do not reflect the fair value of the merchandise," 19 U.S.C. §

1677(18) (2000).  In fact, in the Notice of Initiation of a parallel antidumping investigation of

coated free sheet paper from the PRC, Commerce noted that it still considers the PRC to be an

NME.

> In previous investigations, [Commerce] has determined that the PRC is an NME.  In
> accordance with section 771(18)(C)(i) of the [Tariff] Act [of 1930], the presumption
> of NME status remains in effect until revoked by [Commerce].  The presumption of
> NME status for the PRC has not been rejected by [Commerce] and remains in effect
> for purposes of the initiation of this investigation.

Coated Free Sheet Paper from Indonesia, the People's Republic of China, and the Republic of

Korea, 71 Fed. Reg. 68,537, 68,540 (Dep't Commerce Nov. 27, 2006) (initiation of antidumping

investigation) (internal citations omitted).

Defendant-Intervenor, NewPage Corporation ("NewPage"), is a domestic paper

manufacturer.  In October 2006, NewPage filed a petition with Commerce alleging that

"manufacturers, producers, or exporters of coated free sheet paper (CFS) in the [PRC] . . .

received countervailable subsidies . . . and that such imports are materially injuring, or

threatening material injury to, an industry in the United States."  Coated Free Sheet Paper from

the People's Republic of China, Indonesia, and the Republic of Korea, 71 Fed. Reg. 68,546

(Dep't Commerce Nov. 27, 2006) (initiation of countervailing duty investigation).  Commerce

reviewed NewPage's petition for sufficiency and initiated a countervailing duty investigation of

coated free sheet paper from the PRC on November 27, 2006.  Id. at 68,547-48.  In conjunction

with the countervailing duty investigation, Commerce requested public comment on the issue of

whether the countervailing duty law should be applied to NMEs.  Application of the

Countervailing Duty Law to Imports From the People's Republic of China, 71 Fed. Reg. 75,507

(Dep't Commerce Dec. 15, 2006) (request for comment) ("Request for Comment").

For more than twenty years prior to the initiation of the countervailing duty investigation

of coated free sheet paper from the PRC, Commerce declined to apply countervailing duty law to

NMEs.[3]  In Georgetown Steel Corp. v. United States, 801 F.2d 1308 (Fed. Cir. 1986), the Court

of Appeals for the Federal Circuit ("CAFC") sustained Commerce's decision in that case not to

apply countervailing duty law to the NMEs at issue.  Id. at 1318.  Since Georgetown Steel,

Commerce has repeatedly dismissed petitions filed against products from countries designated as

NMEs.  See, e.g., Oscillating and Ceiling Fans from the People's Republic of China, 57 Fed.

Reg. 24,018, 24,019 (Dep't Commerce Jun. 5, 1992) (final negative countervailing duty

determination) ("[W]e have determined that the PRC fans industry is not a [market-oriented

industry].  As a result, we determine that the countervailing duty law cannot be applied to the

---

[3]However, Commerce has applied the countervailing duty law to "market-oriented" industries within an NME.  See, e.g., Oscillating and Ceiling Fans from the People's Republic of China, 57 Fed. Reg. 24,018 (Dep't Commerce Jun. 5, 1992) (final negative countervailing duty determination) (explaining the test Commerce applies to determine if a particular industry within an NME is "market-oriented").

PRC fan industry. Therefore, [Commerce] is issuing final negative determinations in these proceedings."); Chrome-Plated Lug Nuts and Wheel Locks from the People's Republic of China ("PRC"), 57 Fed. Reg. 877, 878 (Dep't Commerce Jan. 9, 1992) (initiation of countervailing duty investigation) (declining to "initiate an upstream subsidies investigation of the steel and chemical suppliers to the PRC lug nuts industry" because "there is a significant degree of state control in these sectors"). Commerce noted in the Request for Comment that "[t]his is the first CVD investigation involving the PRC since 1991" and acknowledged that "[t]he initiation of the present investigation requires that [Commerce] review its long-standing policy of not applying the countervailing duty law to NMEs, such as the PRC." Request for Comment, 71 Fed. Reg. at 75,507.

Soon after Commerce published notice of the initiation of the countervailing duty investigation of coated free sheet paper from the PRC, Plaintiffs filed suit in this Court requesting both a temporary restraining order and a preliminary injunction to enjoin Commerce from continuing the countervailing duty investigation pending the court's decision in this case. (See Pls.' Mot. for Prelim. Inj. 5.) The Government countered with a motion to dismiss the action for lack of jurisdiction. (Def.'s Mot. to Dismiss 1.) Following oral argument, this Court denied Plaintiffs' request for a temporary restraining order but reserved decision on Plaintiffs' request for a preliminary injunction as well as the Government's and NewPage's motions to dismiss. (Order Denying Pls.' Mot. for TRO, Jan. 11, 2007.)

PARTIES' CONTENTIONS

I.    Plaintiffs' Contentions

**A.    Plaintiffs argue that this Court has jurisdiction to decide their claims.**

Plaintiffs submit that this Court has jurisdiction pursuant to its residual jurisdiction

provision, 28 U.S.C. § 1581(i),[4] to hear their allegation that Commerce's countervailing duty

investigation is ultra vires. (Pls.' Prelim. Inj. Mem. 9-10.) Plaintiffs argue that section 1581(i) is

available to them because the other potential vehicle for judicial review of their claims–filing suit

under 28 U.S.C. § 1581(c)[5] after Commerce completes the investigation–is manifestly

inadequate.[6] Plaintiffs insist that review under section 1581(c) cannot provide Plaintiffs with the

remedy they seek, which is to be freed from the obligation of participating in the underlying trade

---

[4]The relevant subsections of 28 U.S.C. § 1581(i) (2000) provide that

the Court of International Trade shall have jurisdiction of any civil action
commenced against the United States providing for–
* * *
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for
reasons other than the raising of revenue; [and]
* * *
(4) administration and enforcement with respect to [such matters].
This subsection shall not confer jurisdiction over an antidumping or
countervailing duty determination which is reviewable . . . under Section 516A(a)
of the Tariff Act of 1930. . . .

[5]28 U.S.C. § 1581(c) (2000) provides that "[t]he Court of International Trade shall have
exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of
1930."

[6]Jurisdiction is not available under section 1581(i) when "jurisdiction under another
subsection of § 1581 is or could have been available, unless the remedy under that other
subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963
(Fed. Cir. 1987).

remedy proceeding. Plaintiffs explain that by the time they may bring a case under section

1581(c), the countervailing duty investigation they "'seek to prevent will have already

occurred.'" (Id. at 11 (quoting Dofasco Inc. v. United States, 28 CIT __, 326 F. Supp. 2d 1340,

1346 (2004), aff'd on other grounds, 390 F.3d 1344 (Fed. Cir. 2005)).)

Plaintiffs also refute the Government's argument that the case should be dismissed for

lack of jurisdiction on ripeness grounds. Plaintiffs argue that the "final agency action" doctrine

that the Government claims precludes this litigation is "not an absolute bar to challenging agency

actions at an earlier point in time. Rather, the Court simply must analyze whether . . . the

challenged agency action is ripe for review." (Pls.' Reply Br. 18.) Plaintiffs assert that the case

is ripe for review because (a) additional agency fact-finding will not be helpful, as the case

centers around the purely legal question whether Commerce had the authority to initiate the

countervailing duty investigation (id. at 19), and (b) Plaintiffs will suffer irreparable harm "if

Plaintiffs are unduly forced to wait until the Commerce Department issues its final determination

before seeking review." (Id. at 20.)

Plaintiffs complain that withholding judicial review on the matter would result in serious

hardship to Plaintiffs, particularly "the incredible burden imposed by having to respond to the

Commerce Department's countervailing duty questionnaire and supplemental questionnaires and

having to handle the Commerce Department verification." (Id.) Plaintiffs point to Tokyo Kikai

Seisakusho, Ltd. v. United States, 29 CIT __, 403 F. Supp. 2d 1287 (2005), in which, Plaintiffs

allege, the court "explicitly acknowledged that the burdens imposed on respondents in

administrative reviews may very well render a challenge to the Commerce Department's

initiation . . . ripe." (Pls.' Reply Br. 20.) Plaintiffs add that their claim that Commerce's

initiation is ultra vires is exempted from the requirement of finality because it is a claim that the

agency acted in excess of its statutory authority. (Id. at 21.)

      **B.      Plaintiffs argue that Commerce was prohibited from initiating the
countervailing duty investigation by both statute and Commerce's own
binding rule**.

On the merits, Plaintiffs claim that Commerce's initiation of the countervailing duty

investigation of coated free sheet paper from the PRC was ultra vires.[7] Plaintiffs argue that

Commerce does not have the discretion to apply countervailing duty law to NMEs because the

CAFC "definitively ruled" that the countervailing duty statute "may not be applied to imports

from NME countries." (Pls.' Prelim. Inj. Mem. 14.) Plaintiffs maintain that the CAFC's holding

in Georgetown Steel

> did not reflect any deference to the expertise of the administering agency in
> interpreting the statute . . . but rather the court of appeal's own careful
> examination of: (i) the statutory language; (ii) Congressional action (and
> inaction); (iii) the presence of other provisions to address imports from NMEs;
> and (iv) the impracticability of investigating subsidies in NME countries.

(Id.)

Plaintiffs also argue that the legislative history of amendments to the countervailing duty

statute subsequent to Georgetown Steel further supports their position that Congress did not

intend the countervailing duty law to be applied to NMEs. (See id. at 21 (alleging that the

Statement of Administrative Action accompanying the Uruguay Round Agreements Act

-----

      [7]An ultra vires action is one that is "beyond the scope or in excess of legal power or
authority." Webster's Third New Int'l Dictionary 2480 (Philip Babcock Gove ed.-in-chief,
Merriam-Webster 1981).

explicitly affirmed that the countervailing duty law does not apply to NMEs).) Plaintiffs insist that because Congress "has spoken on the matter" Commerce's proposal to "appl[y] the CVD law to an NME country is completely inconsistent with settled law . . . [and] is invalid on its face." (Id. at 23.)

Plaintiffs alternatively argue that "[e]ven if the statute permits the Commerce Department to apply CVD law to NME's, Commerce has promulgated a binding rule" excluding NMEs from the reach of the countervailing duty legislation and this binding rule "may not be amended without first complying with [Administrative Procedure Act ("APA")] rulemaking requirements." (Id.) Plaintiffs assert that Commerce created this binding rule by (a) adopting the position that countervailing duty law does not apply to NMEs "after a specific notice and comment period" in 1984 (id. at 25), (b) consistently dismissing countervailing duty petitions involving NMEs over the two decades following Georgetown Steel (id. at 25), and (c) codifying its intent not to apply countervailing duty law to NMEs in the preamble to its regulations (id. at 27). Plaintiffs argue that Commerce is now "prohibited from changing its approach [i.e., applying countervailing duty law to NMEs] without first complying with the rulemaking requirements of the APA," (id. at 23), which require an agency to "engage in a notice and comment period if it wishes to change [a] rule" (id. at 24). Whether precluded by statute or by Commerce's own binding rule, Plaintiffs argue that Commerce exceeded its authority when it initiated a countervailing duty investigation of coated free sheet paper from the PRC and request that this Court enjoin Commerce from continuing the investigation.

II.     Defendant's Contentions

    **A.     The Government argues that this Court lacks jurisdiction to hear Plaintiffs' claims.**

The Government argues that Plaintiffs may not bring their challenge under section 1581(i) because they may seek judicial review pursuant to another jurisdictional provision, specifically, 28 U.S.C. § 1581(c), after Commerce issues its final determination in the countervailing duty investigation.  (Def.'s Mem. in Supp. of Its Mot. to Dismiss & Opp'n to Pls.' Mot. for a Prelim. Inj. ("Def.'s Mem.") 6.)  The Government insists that the remedy provided by section 1581(c) is "entirely adequate" because section 1581(c) "will give Plaintiffs a full opportunity to contest both the statutory basis of the investigation and the methodological choices made in any final determination . . . ."  (Id. at 12.)

The Government also argues that this Court does not have jurisdiction because "review pursuant to [section] 1581(i) is inappropriate when 'the jurisdictional issue and the merits are inextricably intertwined, and the former cannot be resolved without considering and deciding (at least in part) the latter.'"  (Def.'s Reply in Supp. of Its Mot. to Dismiss ("Def.'s Reply") 6 (quoting Nippon Steel Corp. v. United States, 219 F.3d 1348, 1353 (Fed. Cir. 2000)).)  The Government explains that "it is not possible to separate the merits of the decision from those relating to jurisdiction . . . because in order for this Court to determine whether this investigation is ultra vires, it would have to determine whether CVD law could be applied to an NME . . . ." (Id. at 8 (emphasis added).)

Moreover, the Government adds, this Court lacks jurisdiction on ripeness grounds because Commerce has not yet taken "final agency action."  (Def.'s Mem. 8.)  The Government

argues that the decision to initiate a countervailing duty investigation "is not a final decision as to whether Commerce will change its practice." (Id. at 9.) The Government alleges that the decision to initiate is a "threshold determination" rather than "final agency action" and, thus, is not ripe for review. (Id. (quoting U.S. Ass'n of Imps. of Textiles & Apparel v. United States Dep't of Commerce, 413 F.3d 1344, 1349 (Fed. Cir. 2005)).)

**B.      The Government argues that Commerce is not prohibited by statute or rule from initiating a countervailing duty investigation of the PRC.**

Substantively, the Government urges this Court to deny Plaintiffs' motion for a preliminary injunction because–among other reasons–Plaintiffs are not likely to succeed on the merits of their case. The Government maintains that Commerce has the authority to initiate a countervailing duty investigation of coated free sheet paper from the PRC. (Id. at 15.) The Government asserts that neither the countervailing duty statute nor Commerce's rules limit the agency's power to initiate countervailing duty investigations of NMEs. (Id.) The Government disagrees with Plaintiffs' allegation that the CAFC in Georgetown Steel held that Commerce is prohibited from applying countervailing duty law to NMEs. "Georgetown Steel did not hold that the CVD law could never apply to NMEs under any circumstances, but only that Commerce's decision not to apply it in that case was reasonable."[8] (Id. at 23.)

In addition, the Government argues that Commerce did not violate a binding rule by initiating a countervailing duty investigation of coated free sheet paper from the PRC. The

---

[8]NewPage argues that legislative history indicates that Commerce is authorized to apply countervailing duty law to NMEs. (NewPage Corp.'s Mem. in Supp. of Its Mot. to Dismiss Pls.' Compl. and in Opp'n to Pls.' Mot. for Prelim. Inj. 25 ("the [Permanent Normal Trade Relations] legislation specifically authorized appropriations to Commerce for the purpose of defending U.S. CVD measures with respect to China. 22 U.S.C. § 6943. This evidences Congress' view that Commerce had the legal authority to conduct CVD proceedings on imports from China.").)

Government acknowledges that Commerce has had a policy of not applying countervailing duty law to NMEs but argues that policies are not subject to the notice and comment procedures of the APA. (Id. at 27 (quoting 5 U.S.C. § 553(b)(3)(A) (2000) (excluding "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" from the notice and comment requirements of the APA)).) The Government alleges that "[a]n agency has broad discretion to determine whether notice-and-comment rulemaking or case-by-case adjudication is the more appropriate procedure for changing a policy or practice." (Id. (citing SEC v. Chenery Corp., 332 U.S. 194, 202-03 (1947)).) Therefore, the Government argues that Commerce did not violate the APA by initiating an investigation of the PRC as the mechanism by which to determine whether to change its policy regarding the non-application of countervailing duty law to NMEs. (Id.)

## DISCUSSION

Plaintiffs urge this Court to enjoin Commerce from continuing the countervailing duty investigation of coated free sheet paper from the PRC on the ground that Commerce lacked the authority to initiate the investigation. However, the threshold issue before this Court is whether–prior to the conclusion of the administrative proceeding–this Court has jurisdiction pursuant to 28 U.S.C. § 1581(i) to review Commerce's initiation of a countervailing duty investigation. This Court holds that because Plaintiffs may seek judicial review under section 1581(c) once Commerce issues the final determination in the countervailing duty investigation

and review in accordance with section 1581(c) is not manifestly inadequate, this Court does not

have jurisdiction under section 1581(i) to review Commerce's decision to initiate.

I.      Jurisdiction is Available Under 28 U.S.C. § 1581(c).

Plaintiffs claim that 28 U.S.C. §§ 1581(i)(2) and (i)(4) provide the basis for this Court's

jurisdiction over this matter.  The statute grants this Court exclusive jurisdiction over "any civil

action . . . that arises out of any law of the United States providing for– . . . (2) tariffs, duties,

fees, or other taxes on the importation of merchandise for reasons other than the raising of

revenue; [or] . . . (4) administration and enforcement with respect to" such matters.  28 U.S.C.

§ 1581(i) (2000).  While section 1581(i) is "a broad residual jurisdictional provision," Miller &

Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), it contains the limitation that "[t]his

subsection shall not confer jurisdiction over an antidumping or countervailing duty determination

which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff

Act of 1930 [19 U.S.C. § 1516a] . . . ."  28 U.S.C. § 1581(i).  The CAFC interprets this limitation

to mean that the Court of International Trade does not have jurisdiction over a matter under

section 1581(i) when "jurisdiction under another subsection of section 1581 is or could have

been available, unless the remedy under that other subsection would be manifestly inadequate."

Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) (quoting Miller,

824 F.2d at 963).

This Court agrees with the Government that, at the conclusion of Commerce's

investigation, Plaintiffs may file suit under section 1581(c) challenging Commerce's authority to

initiate the countervailing duty investigation.  Section 1581(c) grants the Court jurisdiction "of

any civil action commenced under section 516A of the Tariff Act of 1930 [19 U.S.C. § 1516a]."

28 U.S.C. § 1581(c) (2000). Section 516A of the Tariff Act of 1930 authorizes interested parties

to file suit within thirty days after Commerce publishes a final countervailing duty determination

in the Federal Register "contesting any factual findings or legal conclusions upon which the

determination is based." 19 U.S.C. § 1516a(a)(2). As the court explained in Tokyo Kikai

Seisakusho,

> [i]f plaintiffs are dissatisfied with the outcome of the [underlying trade remedy
> proceeding] they will have the opportunity to challenge, in an action brought
> under 19 U.S.C. § 1516a, the authority of Commerce to initiate the review as well
> as other aspects of a final decision. Dismissing plaintiffs' complaint, therefore,
> will not deprive plaintiffs of their opportunity to be heard on the merits of their
> complaint.

Tokyo Kikai Seisakusho, 403 F. Supp. 2d at 1293. Thus, Plaintiffs have a clear right of review

under section 1581(c) of Commerce's final determination after Commerce concludes the

countervailing duty investigation.

II.       The Remedy Available Under 28 U.S.C. § 1581(c) is Not "Manifestly Inadequate."

Because Plaintiffs may bring their challenge under section 1581(c) at the conclusion of

Commerce's investigation, the question becomes whether the judicial review provided by

section 1581(c) is "manifestly inadequate" for Plaintiffs. See Miller, 824 F.2d at 963. Although

"neither Congress nor the courts have attempted to precisely define" the "manifestly inadequate"

standard, Hylsa, S.A. de. C.V. v. United States, 21 CIT 222, 228 (1997) ("Hylsa I"),  it is clear

that "'mere allegations of financial harm, or assertions that an agency failed to follow a statute,

do not make the remedy established by Congress manifestly inadequate.'" Int'l Custom Prods.,

Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting Miller, 824 F.2d at 964).

Further, "[g]iven the clear Congressional preference expressed in 28 U.S.C. § 1581(i) for review

in accordance with 19 U.S.C. § 1516a, the court is reluctant to interfere in ongoing proceedings

absent clear indication of the lack of adequacy of a § 1581(c) review." Hylsa I, 21 CIT at 228. If

Plaintiffs "will have a meaningful opportunity after the final determination to challenge

Commerce's decision . . . , then the court must stay its hand at this stage of the proceedings."

Macmillan Bloedel Ltd. v. United States, 16 CIT 331, 332 (1992). This Court holds that section

1581(c) provides a sufficient opportunity for Plaintiffs to seek judicial review of their issues. See

Hylsa I, 21 CIT at 227.[9]

One factor for the court to consider in determining whether section 1581(c) review is

manifestly inadequate "is whether the agency has acted ultra vires." Id. Plaintiffs acknowledge

that they could not seek interlocutory review of Commerce's decision to initiate if Commerce has

the authority to apply countervailing duty law to NMEs. (Id. ("We emphasize that this is not a

case involving mere participation in a lawful Commerce Department proceeding, which we

recognize would not be sufficient to trigger jurisdiction under section 1581(i).").) Yet, it is not

clear that Commerce is prohibited from applying countervailing duty law to NMEs. Nothing in

the language of the countervailing duty statute excludes NMEs. In fact,"[a]t the time of the

original enactment [of the countervailing duty statute] there were no nonmarket economies;

---

[9]This Court acknowledges the Asocoflores line of cases, which hold that section 1581(c) is manifestly inadequate to address an allegation that an agency initiated an unlawful trade remedy proceeding. See Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States, 13 CIT 584, 588, 717 F. Supp. 847 (1989) ("Asocoflores"). However, this Court notes that it is not bound by these prior decisions and that the CAFC explicitly declined to resolve the issue of whether section 1581(i) is available to plaintiffs who allege that Commerce's initiation of a trade remedy proceeding is ultra vires, Asociacion Colombiana de Exportadores de Flores v. United States, 903 F.2d 1555, 1558 (Fed. Cir. 1990). This Court interprets prevailing case law to direct this Court to find that section 1581(c) is not manifestly inadequate in this case.

Congress therefore had no occasion to address" whether countervailing duty law would apply to NMEs. Georgetown Steel, 801 F.2d at 1314. Although Plaintiffs allege that "[t]he CAFC has definitively ruled that the CVD law was not intended to be applied against NMEs" (Pls.' Prelim. Inj. Mem. 14), the Georgetown Steel court did not go as far as Plaintiffs claim and find that the countervailing duty law is not applicable to NMEs, Georgetown Steel, 801 F.2d at 1318. Rather, the Georgetown Steel court only affirmed Commerce's decision not to apply countervailing duty law to the NMEs in question in that particular case and recognized the continuing "broad discretion" of the agency to determine whether to apply countervailing duty law to NMEs. Id. While a later court may determine that the statute favors Plaintiffs' interpretation that countervailing duty law does not apply to NMEs, it is not clear at this point that Commerce's initiation of the countervailing duty investigation was "patently ultra vires."[10] See Hylsa I, 21 CIT at 229. In these circumstances "it is not a futile exercise to provide the government with an opportunity to grapple with [the substance of] this issue in the first instance." Id. at 228-29.

Additionally, this Court finds that the delay of judicial review occasioned by awaiting the conclusion of Commerce's countervailing duty investigation is not significant enough to make jurisdiction under section 1581(i) manifestly inadequate. Commerce has not yet decided whether

---

[10]Plaintiffs face a similar obstacle with their "binding rule" claim. Plaintiffs argue that Commerce was not allowed to initiate the countervailing duty investigation of coated free sheet paper from the PRC due to a "binding rule" Commerce adopted exempting NMEs from application of the countervailing duty law. (Pls.' Prelim. Inj. Mem. 23.) However, this Court is not convinced that Commerce adopted such a "binding rule." While Commerce acknowledges that it has a policy or practice of not applying countervailing duty law to NMEs, see, e.g., Request for Comment, Commerce has not promulgated a regulation confirming that it will not apply countervailing duty law to NMEs. In the absence of a rule, Commerce need not follow the notice-and-comment obligations found in the APA, 5 U.S.C. § 553, and instead may change its policy by "ad hoc litigation." Chenery Corp., 332 U.S. at 203.

to apply countervailing duty law to NMEs; Plaintiffs' only obligation at this point is to participate in the countervailing duty investigation.[11]  This obligation is similar to that of the plaintiff in FTC v. Standard Oil, 449 U.S. 229, 233 (1980).  The Standard Oil court concluded that because the plaintiff "d[id] not contend that the issuance of the complaint had any . . . legal or practical effect, except to impose upon [the plaintiff] the burden of responding to the charges made against it," id. at 242, judicial review would have to wait until the investigation concluded, id. at 247.[12]

Plaintiffs complain that the burden of participating in the countervailing duty investigation as well as the business risk of incurring unknown countervailing duty liability on future imports renders section 1581(c) manifestly inadequate.  (Pls.' Prelim. Inj. Mem. 34-35.) However, the cost associated with defending oneself in a trade remedy proceeding is not the type of burden with which this Court concerns itself.  Because the "inconvenience and expense" associated with a trade remedy proceeding "are inherent in the administrative and judicial review process [they] cannot therefore constitute manifest inadequacy for what is the normal jurisdictional scheme." Abitibi-Consol. Inc. v. United States, 30 CIT __, 437 F. Supp. 2d 1352,

---

[11]This Court agrees with the Asocoflores court that not participating in the countervailing duty investigation is not a viable option for Plaintiffs.  Asocoflores, 13 CIT at 587 ("[P]laintiffs cannot simply choose not to participate at this time because as a practical matter the risk of non-participation is simply too great.").

[12]While the question before the Standard Oil court was whether initiation of an investigation constituted "final agency action," this Court finds the Standard Oil court's analysis instructive on whether it is "manifestly inadequate" to require Plaintiffs to seek judicial review of Commerce's decision to initiate only after participating in the countervailing duty investigation. This Court finds that lack of "legal or practical effect" of the investigation is relevant in evaluating the hardship to Plaintiffs of participating in the investigation.  See Standard Oil, 449 U.S. at 247.

1362 (2006); see also Standard Oil, 449 U.S. at 244 ("we do not doubt that the burden of

defending this proceeding will be substantial.  But the expense and annoyance of litigation is part

of the social burden of living under government") (internal quotation omitted).  Furthermore, the

business uncertainty claimed by Plaintiffs is "an ordinary effect of the [trade remedy] regime, and

therefore, the disruptions it entails cannot constitute a basis under which the court bypasses

section 1581(c) jurisdiction in favor of section 1581(i)."  Abitibi-Consol., 437 F. Supp. 2d at

1361.

        Moreover, this Court notes that the delay before section 1581(c) review is available is not

lengthy.  Ordinarily, Commerce must issue a preliminary determination in a countervailing duty

investigation within sixty-five days of the initiation of the investigation. 19 U.S.C. § 1671b(b)

(2000).[13]  If Commerce makes an affirmative preliminary determination, the agency must then

make its final determination within seventy-five days after the date of the preliminary

determination.  19 U.S.C. § 1671(d) (2000).  Plaintiffs will likely have to wait less than six

months from the petition filing date for the availability of judicial review under section 1581(c).

        Plaintiffs have failed to convince this Court that waiting until judicial review under

section 1581(c) is available is manifestly inadequate.  Because Plaintiffs have not demonstrated

that the remedy afforded by section 1581(c) is manifestly inadequate, this Court concludes that it

lacks jurisdiction under section 1581(i) to hear Plaintiffs' case.  The proper time for Plaintiffs to

---

[13]The deadline for the preliminary determination can be extended to 130 days in certain
circumstances.  19 U.S.C. § 1671b(c)(1) (2000).

bring suit challenging Commerce's initiation is <u>after</u> Commerce publishes the final determination

in the countervailing duty investigation.[14]

---

[14]As this Court dismisses Plaintiffs' action on the ground that section 1581(c) is available and adequate to review Plaintiffs' claims, this Court finds it unnecessary to address an additional ground the Government raises, which is to dismiss the case for lack of jurisdiction because Plaintiffs' claims are not yet ripe. However, the <u>Standard Oil</u> and <u>U.S. Association of Importers of Textiles and Apparel</u> precedents suggest that this Court could also dismiss Plaintiffs' case on ripeness grounds. The <u>Standard Oil</u> court held that initiation of an investigation was a "threshold determination," <u>Standard Oil</u>, 449 U.S. at 493, and dismissed the plaintiff's suit for lack of jurisdiction on the ground that judicial review was not available until the agency took "final agency action." <u>Id.</u> at 496. Similarly, the court in <u>U.S. Association of Importers of Textiles and Apparel</u> held that the trial court lacked jurisdiction to enjoin an agency from considering a request to apply economic safeguards on imports from the PRC until the agency took "final agency action." <u>U.S. Ass'n of Imps. of Textiles & Apparel</u>, 413 F.3d at 1353.

This Court would further like to note that the Government's argument that <u>Nippon Steel</u> precludes jurisdiction here is without merit. (<u>See</u> Def.'s Reply Br. 6.) <u>Nippon Steel</u> did <u>not</u> hold, as the Government claims, that "review pursuant to 1581(i) is inappropriate when 'the jurisdictional issue and the merits are inextricably intertwined . . . .'" (Def.'s Reply Br. 6 (quoting <u>Nippon Steel</u>, 219 F.3d 1348, 1353 (Fed. Cir. 2000)).) Rather, the <u>Nippon Steel</u> court held that where "the jurisdictional issue and the merits are inextricably intertwined, and the former cannot be resolved without considering and deciding (at least in part) the latter," the CAFC is sometimes able to "bypass[] the jurisdictional question and decid[e] the merits" of the case. <u>Nippon Steel</u>, 219 F.3d at 1353.

## CONCLUSION

Because the initiation by Commerce of a countervailing duty investigation is reviewable under 28 U.S.C. § 1581(c) and the remedy available under that provision is not manifestly inadequate, this Court cannot exercise jurisdiction over this case under section 1581(i). Therefore, this Court grants Defendant's motion to dismiss the action for lack of jurisdiction. Judgment will enter accordingly.

___/s/_Gregory_W._Carman__<br>Gregory W. Carman

Dated: March 29, 2007
      New York, New York

**Slip Op. 07-50**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

GOVERNMENT OF THE PEOPLE'S REPUBLIC
OF CHINA, GOLD EAST PAPER (JIANGSU)
COMPANY, LIMITED, and GLOBAL PAPER
SOLUTIONS, INCORPORATED,

                  Plaintiffs,
       v.

UNITED STATES,

                  Defendant,

   and

NEWPAGE CORPORATION, and UNITED
STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO-CLC

                Defendants-Intervenor.

**Before: Gregory W. Carman, Judge**

Court No. 07-00010

**JUDGMENT**

Upon consideration of the papers submitted by the parties and the arguments presented at oral argument, and upon due deliberation, it is hereby

**ORDERED** that Defendant's motion to dismiss for lack of jurisdiction is granted.


                         \_\_/s/\_Gregory\_W.\_Carman\_\_\_\_\_
                              Gregory W. Carman

Dated:  March 29, 2007
         New York, NY